**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEVEN FERNANDO VIDAL-ALVARADO,<br>Petitioner,<br>v.<br>LUIS SOTO, *et al.*,<br>Respondents. | Civil Action No. 26-9138 (JXN)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Petitioner Steven Fernando Vidal-Alvarado's ("Petitioner") Second Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his continued detention. (ECF No. 1.) Respondents ("Government") opposed (ECF No. 17) and Petitioner replied (ECF No. 18). Having considered the parties' submissions in support of and opposition to the Petition, the Court decides the Second Petition without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, the Second Petition is **DENIED**.

## I. BACKGROUND

Petitioner, an Ecuadorian citizen, entered the United States without inspection in 2021 and has remained here since. (Second Pet. at 3, ECF No. 1.) On October 30, 2023, United States Citizenship and Immigration Services ("USCIS") approved Petitioner's Form I-360 petition for Special Immigrant Juvenile ("SIJ") classification and granted SIJ-based deferred action and

employment authorization through October 30, 2027. (*Id.* at 6.) On April 16, 2026, USCIS issued a notice terminating Petitioner's SIJ-based deferred action. (*Id.* at 8.)

On January 22, 2026, Immigration Customs and Enforcement ("ICE") agents arrested Petitioner. (*Id.* at 6.) Following his arrest, Petitioner was detained at Delaney Hall, in Newark, New Jersey, without an individualized bond hearing because he was held in mandatory detention under 8 U.S.C. § 1225(b)(2). (*Id.* at 6–7.)

On January 28, 2026, Petitioner filed his first petition for writ of habeas corpus arguing that 8 U.S.C. § 1226(a), which authorizes release on bond after a hearing before an immigration judge ("IJ"), applied to his detention. *See Vidal-Alvarado v. Bondi*, No. 26-880, ECF No. 1. On February 19, 2026, the Court issued a Memorandum and Order granting the Petition, finding Petitioner detained under 8 U.S.C. § 1226(a), and ordering Respondents to provide Petitioner with "an individualized bond hearing . . . before an immigration judge [to] assess whether [Petitioner] presents a flight risk or a danger to the community." *Vidal-Alvarado v. Bondi* (*Vidal-Alvarado I*), No. 26-880, 2026 WL 468228, at *3 (D.N.J. Feb. 19, 2026). On April 20, 2026, an IJ denied Petitioner bond, finding he failed to demonstrate that he was not a danger to the community or a flight risk. *Vidal-Alvarado v. Bondi* (*Vidal-Alvarado II*), No. 26-880, 2026 WL 1506009, at *1 (D.N.J. May 28, 2026).

On April 24, 2026, Petitioner filed a Motion to Enforce Judgment, arguing that his bond hearing did not comport with due process and was fundamentally unfair. *Id.* On May 28, 2026, the Court denied the motion to enforce. *Id.* at *2–3. The Court found Petitioner did not show his bond hearing was fundamentally unfair. *Id.* The Court explained that the IJ considered Petitioner's arrest for driving under the influence ("DUI") and found that Petitioner had not met his burden of showing he was not a danger to the community. *Id.* Although Petitioner's motion challenged the

termination of his deferred action as arbitrary and capricious, the Court found a Motion to Enforce was not the proper channel to do so. *Id.* at *2 n.3.

On June 24, 2026, an IJ ordered Petitioner removed from the United States. (Gov't Opp'n at 2, ECF No. 17.) Petitioner appealed, and on July 22, 2026, the Board of Immigration Appeals ("BIA") denied the appeal on procedural ground and granted Petitioner time to re-file. (*Id.*) Petitioner re-filed his appeal on August 11, 2026. (*Id.*)

On July 22, 2026, the Court closed Petitioner' first petition and lifted any transfer restrictions that had been imposed. *See* Letter Order, *Vidal-Alvarado v. Bondi*, No. 26-880 (July 22, 2026), ECF No. 18. On that same day, Petitioner filed his instant Second Petition. (*See* Second Pet.) Petitioner argues that (1) his detention is unduly prolonged; (2) terminating his deferred action violated the Fifth Amendment and the Administrative Procedure Act ("APA"); and (3) his detention pending the USCIS's determination of his U-visa petition violates federal law and the APA. (*See generally id.*) The Government opposed the Second Petition (Gov't Opp'n) and Petitioner replied (Pet. Reply, ECF No. 18).

## II. <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 2241(c)(3), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." *Id.*; *Maleng v. Cook*, 490 U.S. 488, 490 (1989). A district court's authority includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner has the burden of showing he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III. DISCUSSION

In his Second Petition, Petitioner argues that (1) his detention is unduly prolonged; (2) terminating his deferred action violated the Fifth Amendment and the APA; and (3) his detention pending the USCIS's determination of his U-Visa petition violates federal law and the APA. (*See generally id.*)

### A. Count One: Prolonged Detention

In Count One of his Second Petition, Petitioner challenges his continued detention under 8 U.S.C. § 1226(a) as unduly prolonged. (Second Pet. at 14–15.) Petitioner argues his detention, which began on January 22, 2026, is prolonged and likely to continue as his BIA appeals of his removal order and bond hearing remain pending, and ICE intends to detain Petitioner for the duration of his U-Visa decision. (*Id.* at 14.) Relying on *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203 (3d Cir. 2020), Petitioner contends his detention has become unreasonably prolonged such that due process now requires a new bond hearing at which the Government must justify continued detention by clear and convincing evidence. (*Id.* at 14–15.)

Petitioner has been detained for approximately eight months, but duration alone cannot "sustain a due process challenge by a detainee who has been afforded the process contemplated by § 1226(a) and its implementing regulations." *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 277 (3d Cir. 2018). Petitioner's reliance on *German Santos* is misplaced; that case considered prolonged detention of noncitizens detained pursuant to § 1226(**c**). 965 F.3d at 206. Plaintiff is detained pursuant to § 1226(**a**). "Unlike § 1226(c) detainees . . . who were detained for prolonged periods without being given any opportunity to apply for release on bond, [petitioner] was granted meaningful process prior to filing his habeas petition." *Borbot*, 906 F.3d at 278–79. To be sure, the Third Circuit "recognized the concern that, despite an initial bond hearing, detention

under § 1226(a) might become unreasonably prolonged and may warrant relief beyond the bond hearing provided by the statute and its implementing regulations." *Chinoso Onuwa v. Field Off. Dir.*, No. 26-2403, 2026 WL 772435, at *2 (D.N.J. Mar. 19, 2026) (cleaned up) (citing *Borbot*, 906 F.3d at 280). But the Third Circuit did not decide what those circumstances may be. *Id*; *see also Borbot*, 906 F.3d at 280 ("We therefore need not decide when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing in order to conclude that Borbot's due process rights were not violated.").

"Here, [p]etitioner has been detained for significantly less time than the petitioner in *Borbot*, who had been detained for two years before filing his petition. He also had a bond hearing a few months ago. Petitioner's 'relatively brief detention since that date without a bond hearing does not violate his due process rights.'" *Guillen v. Soto*, No. 26-3285, 2026 WL 1005326, at *3 (D.N.J. Apr. 14, 2026) (quoting *Viantsko v. Lowe*, No. 26-563, 2026 WL 963038, at *4 (M.D. Pa. Apr. 9, 2026)). Moreover, Petitioner's BIA appeal is still pending, and he may request a custody redetermination from the immigration courts upon a showing of changed circumstances. 8 C.F.R. § 1003.19(e). Accordingly, Petitioner's detention is not unduly prolonged at this time.

### B. Count Two: Fifth Amendment and APA Violation Based on Termination of Deferred Action

In Count Two, Petitioner argues that USCIS's termination of his SIJ-based deferred action without meaningful pre-deprivation process violates his Fifth Amendment due process rights and the APA. (Second Pet. at 16–17.) Petitioner argues that the timing of the termination, three days before his bond hearing, "supports an inference that the revocation was coordinated or deployed to influence custody rather than resulting form a neutral, ordinary, case-by-case review." (*Id.* at 16.)

The Fifth Amendment's Due Process Clause precludes the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause applies to citizens and non-citizens alike. *Zadvydas*, 533 U.S. at 693. When a protected interest is at stake, courts determine the process due by weighing the private interest, the risk of erroneous deprivation under the procedures used, and the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "But the range of interests protected by procedural due process is not infinite." *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570 (1972). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

The Government can terminate deferred action at its discretion. Deferred action, which allows recipients to apply for employment authorization, is "an act of administrative convenience to the government that gives some cases lower priority" for immigration enforcement. 8 C.F.R. § 274a.12(c)(14). It is a "form of enforcement discretion not to pursue the removal of certain aliens for a limited period in the interest of ordering enforcement priorities in light of limitations on available resources, taking into account humanitarian considerations and administrative convenience." 8 C.F.R. § 236.21(c)(1).

USCIS's Policy Manual explicitly states: "If USCIS previously granted deferred action to an alien with SIJ classification in the exercise of discretion, the alien's deferred action remains valid for the authorized period, *unless terminated by USCIS, on a case-by-case basis, as a matter of discretion*." 6 USCIS-PM J.4(G)(1) (emphasis added). The Policy Manual continues "USCIS reserves the right to terminate prior grants of deferred action and revoke the related employment authorization as a matter of discretion." 6 USCIS-PM J.4(G)(2). A benefit the Government may explicitly revoke at its discretion on a case-by-case basis, with no avenue for appeal or

administrative reconsideration, cannot become a "legitimate claim of entitlement" under *Roth*. 408 U.S. at 577. Because the Fifth Amendment does not protect an interest in continued deferred action status, Petitioner cannot show the termination of his deferred action status violated his Fifth Amendment rights.

Petitioner also contends the Government violated the APA in terminating his deferred action by failing to "provide a reasoned explanation addressing time, reliance interest, the pending bond hearing, Petitioner's approved SIJ classification, victim status, family circumstances, or less disruptive alternatives." (Second Pet. at 16.) Petitioner essentially asks the Court to find Respondents violated the APA by revoking his deferred action status and asks the Court to set aside the cancellation of his deferred actions status. (*Id.* at 12).[1]

The APA defines the scope of the Court's ability to review actions by agencies and authorizes a court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The APA, in short, incorporates the traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). As explained above, the grant of SIJ-based deferred action is discretionary and may be terminated by the USCIS as a matter of discretion. 6 USCIS-PM J.4(G)(2). Aside from the proximity in time to his bond hearing, Petitioner offers no evidence that the termination of his deferred action was arbitrary and

---

[11] Petitioner argues that the termination of his deferred action "has been used as a continuing premise for detention." (Second Pet. at 17.) In his Motion to Enforce, Petitioner argued his bond hearing was fundamentally unfair because the IJ considered the improper termination of Petitioner's deferred action. *Vidal-Alvarado II*, 2026 WL 1506009, at *2. The Court rejected this argument. *Id*. at *2–3. The Court acknowledged the IJ discussed the termination of Petitioner's deferred action in finding Petitioner a flight risk. *Id.* at *2 n.3. But the IJ also thoroughly discussed Petitioner's recent DUI arrest in concluding Petitioner had not met his burden of showing he was not a danger to the community. *Id.* As the IJ did not only rely on the termination of Petitioner's deferred action in denying bond, and the Court already found that Petitioner had not shown that his bond hearing was fundamentally unfair, the Court will not revisit Petitioner's argument that the revocation of his deferred action status is the continuing premise for his detention.

capricious. Petitioner fails to acknowledge that although USCIS did not terminate his deferred action until after he was detained, termination occurred after his DUI arrest.

Additionally, Petitioner's APA claims cannot be brought in a habeas petition without a nexus to his release. As explained by the Third Circuit:

> The text of the APA allows challenges to agency action to be brought in habeas petitions. 5 U.S.C. § 703; *see also Gardner v. Grandolsky*, 585 F.3d 786, 788, 790–93 (3d Cir. 2009) (deciding an APA claim against a BOP regulation within a habeas petition). But the writ of habeas corpus is a means of challenging "unlawful executive detention" for which the "typical remedy . . . is . . . release." *Munaf v. Geren*, 553 U.S. 674, 693, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008). Thus, for an APA claim to be brought in habeas, it must have some relationship to the prisoner's release.

*Thieme v. Warden Fort Dix FCI*, 154 F.4th 115, 123 (2025). Here, the Government did not detain Petitioner because his deferred action status was revoked; he is detained pursuant to 8 U.S.C. § 1226(a) and was denied bond after an IJ found Petitioner did not meet his burden of showing he is not a danger to the community. As Petitioner remains detained following the IJ's finding that he is a danger to the community, his APA claim does not have a nexus to his detention or release such that it can be brought in a habeas petition.

### C. Count Three: Federal Law and APA Violation Based on Detention with Pending U-Visa Application

In Count Three, Petitioner argues that based on his pending U-Visa application, his detention is contrary to the law under the APA because his detention is prohibited by a preliminary injunction entered in a class action lawsuit in the Central District of California. (Second Pet. at 17–18.); *see Immigr. Ctr. for Women & Child. v. Noem* ("*ICWC*"), 351 F.R.D. 324 (C.D. Cal. 2026). Petitioner argues the injunction restored the victim-centered framework and requirements that ICE refrain from detaining U-Visa applicants absent exceptional circumstances. (Second Pet. at 17.)

In 2021, ICE instructed agency personnel to refrain from immigration enforcement against individuals with pending U-Visa applications ("2021 Directive"). *ICWC*, 351 F.R.D. at 353. Unless "exceptional circumstances" applied, ICE was to "defer" immigration enforcement until USCIS adjudicated the U-Visa petition. *Id.* In 2025, however, ICE rescinded the 2021 Directive, eliminated the presumption of protection from immigration enforcement for U-Visa petitioners, and replaced it with a presumption of enforcement, subject to narrow limitations ("2025 Guidance"). *Id.* at 354.

In *ICWC*, the Central District of California held the 2025 Guidance was arbitrary, capricious, and contrary to law. *Id.* at 381–88. The *ICWC* Court preliminarily certified three classes, one of which is relevant here: individuals with pending U-Visa petitions whom "ICE detains or seeks to detain for civil immigration enforcement." *Id.* at 396. Under 5 U.S.C. § 705, the *ICWC* Court stayed the 2025 Guidance as applied to those classes. *Id.* at 397.

Assuming *ICWC* binds this Court, it does not entitle Petitioner to release. If *ICWC* applies, the 2021 Directive remains in effect, as the 2025 Guidance rescinded the 2021 Directive. But the 2021 Directive did not forbid *all* "enforcement against U visa petitioners"; it "allowed immigration enforcement against U visa petitioners in 'exceptional circumstances.'" *Id.* at 353. Petitioner argues the Government does not identify an agency determination that Petitioner falls into the "exceptional circumstance" category. (Pet. Reply at 11.) Yet Petitioner is currently detained after an IJ found he was a danger to the community based on his DUI arrest and the facts surrounding it. *Vidal-Alvarado II*, 2026 WL 1506009, at *3. The IJ explained Petitioner had a .13 percent blood alcohol content while driving 88 miles per hour in a 55 miles per hour zone. *Id.* Petitioner was also ticketed for drinking alcohol in a motor vehicle on the highway. *Id.* Given the recency of this event and the factors involved, the IJ concluded Petitioner did not establish that he would not be a danger

to the community and denied him bond. *Id.* There is no evidence to support a finding that Petitioner's arrest for DUI is not an "exceptional circumstance" for immigration officials to detain him, notwithstanding his pending U-Visa petition. *See* 2021 Directive at 3 (explaining that "exceptional circumstances" for immigration enforcement may exist when a noncitizen "poses an articulable risk of death, violence, or physical harm to any person.").[2] As Petitioner is currently detained and was denied bond following a finding that he did not meet his burden of showing he is not a danger to the community, Petitioner has not shown that his detention is prohibited by a preliminary injunction entered in *ICWC*.

## IV. CONCLUSION

For the reasons set forth above, the Second Petition (ECF No. 1) is **DISMISSED without prejudice**. An appropriate Order accompanies this Opinion.

**DATED: 10/6/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**

[2] ICE Directive 11005.3, *Using a Victim-Centered Approach with Noncitizen Crime Victims (*Dec. 2, 2021) ("2021 Directive").